UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| DONNELL D. MAYES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:07-cv-0193-DFH-TAB |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner of | ) | |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

ENTRY ON JUDICIAL REVIEW

Plaintiff Donnell Mayes brings this action seeking review of the final decision of the Commissioner of the Social Security Administration denying his application for supplemental security income. An Administrative Law Judge ("ALJ") determined that Mr. Mayes was disabled but was not eligible for benefits because he was capable of performing a significant range of medium work if he stopped his drug and alcohol abuse. See 42 U.S.C. § 1382c(a)(3)(J) (person shall not be considered disabled if alcoholism or drug addiction would be contributing factor to finding of disability). As explained in detail below, the court affirms the ALJ's denial of supplemental security income.

*Background*

Mr. Mayes was born in 1973 and was thirty two years old at the time of the ALJ's decision.  He has completed the eighth grade, with some experience in special education classes.  R. 185.  He has worked for short periods as a janitor, a telemarketer, a factory worker, and at fast food restaurants.  R. 78-81.

Mr. Mayes applied for supplemental security income in 2003.  He complained of abdominal pain due to a colostomy at birth and subsequent procedures.  R. 151-55.  He also claimed to have pain in his feet that limited his ability to walk.  R. 154.

Mr. Mayes reported that he had a history of drinking alcohol and using marijuana and cocaine.  R. 185.  He said that he was arrested for conspiracy to sell drugs and that he had spent about ten years in prison.  *Id.*  Mr. Mayes was treated for substance abuse at Harbor Light Detoxification Center in 1997, where he reported no problems with taking care of himself.  R. 176.  His counselor there determined that his substance abuse moderately impaired his functioning.  R. 174.  Mr. Mayes also reported receiving inpatient care at Koala Hospital and Midwest Medical Clinic.  R. 93, 97.

Mr. Mayes failed to appear at his appointment with the Social Security Administration's consulting doctor, but his attorney arranged for him to see Dr.

Smith after his hearing with the ALJ.   Dr. Thomas Smith performed a psychological examination on Mr. Mayes in December 2005 and administered several tests.  R. 183-98.  Mr. Mayes told Dr. Smith that he was often sad, had difficulty sleeping, and had long-standing problems with memory and concentration.  R. 184.  He also stated that he had been stabbed in the head and was sexually assaulted as a child.  *Id.*  He reported hearing voices and being afraid that gay people were going to harm him.  *Id.*

Dr. Smith reported that Mr. Mayes had difficulty with recall, mathematical calculations, and proverb interpretation.  R. 186-87.  His test scores placed him in the mildly mentally retarded range, with reading and math scores significantly below average.  R. 190.  Mr. Mayes stated that he was able to care for himself, clean the house, do simple cooking, and make sure his nephew got on and off the bus.  R. 189.  Dr. Smith diagnosed Mr. Mayes with major depression, post traumatic stress disorder, substance abuse in partial remission, and mild mental retardation.  R. 191.  "He has a history of polysubstance dependence, which is in partial remission, with his only drinking occasionally, and the mental retardation and mental disorders appear to predate the substance use problems."  *Id.*

*Testimony at the Hearing*

Mr. Mayes testified that he was last intoxicated two days before the hearing and had recently used marijuana.  R. 205, 209.  He testified that he drank

approximately six beers every other day.   R. 209.   He also testified that he attended approximately fifteen Narcotics Anonymous meetings per month and attended church every week.   R. 211-12.   He stated that eight of his friends or family members had died within a period of one month in 1997.   R. 214.

Mr. Mayes stated that the day before the hearing, he traveled two hours on city buses to visit his son and spent a few hours with the baby's mother at the mall.   Mr. Mayes said that he had difficulty reading and was unable to perform basic subtraction.   R. 227-28.   He testified that he had enrolled in a GED class, but did not complete it because it was too hard for him.   R. 204.

Constance Brown, a vocational expert, testified that Mr. Mayes had no past relevant work experience.   R. 230.   She also testified that a hypothetical individual of his age, education, and work experience who could do no more than occasional bending, squatting, and crawling and was restricted to simple and repetitive tasks would be able to work as a janitor or building cleaner (5600 jobs in Indiana at light level); maid or housekeeper (8000 jobs in Indiana); or a food preparer or server (12,000 jobs in Indiana).   R. 230-31.   In addition, she testified that such a person would be able to do medium level work as a janitor or building cleaner (26,000 additional jobs), housekeeper (7300 additional jobs), or in food preparation (3400 additional jobs).   R. 231.   She stated that for all of these jobs, the person must be able to attend the job, remember simple instructions, stay on task, and work at an acceptable speed.   R. 232-33.

*Procedural History*

The ALJ concluded that Mr. Mayes was not disabled for the purpose of the Social Security Act and issued his decision denying supplemental security income on June 30, 2006. R. 14-23. The Appeals Council denied Mr. Mayes' request for review, leaving the ALJ's decision as the final decision of the Commissioner of Social Security. See *Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000); *Luna v. Shalala*, 22 F.3d 687, 689 (7th Cir. 1994). Mr. Mayes now seeks review by this court of the denial of his application. The court has jurisdiction in the matter under 42 U.S.C. §§ 405(g) and 1383(c)(3).

*Disability Standards and Judicial Review*

To be eligible for supplemental security income, a claimant must establish that he suffers from a disability within the meaning of the Social Security Act. The claimant must show that he is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment that could be expected to result in death or that has lasted or could be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). Mr. Mayes was disabled only if his impairments were of such severity that he could not engage in any kind of substantial work existing in the national economy, regardless of whether such work was actually available to him. *Id.* at § 1382c(a)(3)(B).

To determine whether a claimant is disabled, the ALJ must apply the following five-step inquiry:

(1) Has the claimant engaged in substantial gainful activity?  If so, he is not disabled.

(2) If not, did the claimant have an impairment or combination of impairments that were severe?  If not, he is not disabled.

(3) If so, did the impairment(s) meet or equal a listed impairment in the appendix to the regulations?  If so, he is disabled.

(4) If not, could the claimant do his past relevant work?  If so, he is not disabled.

(5) If not, could the claimant perform other work given his residual functional capacity, age, education, and experience?  If so, then he is not disabled.  If not, he is disabled.

*Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001); see generally 20 C.F.R. § 416.920.  When applying this test, the burden of proof is on the claimant for the first four steps and on the Commissioner for the fifth step.  *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).  If the analysis leads to a conclusion that the claimant is disabled, the ALJ must consider whether alcohol or drug addiction would be a contributing factor material to the finding of disability.  If it would, the claimant will not be considered disabled for purposes of the supplemental security income program.  42 U.S.C. § 1382c(a)(3)(J).

Applying the five-step process, the ALJ determined at step one that Mr. Mayes had not performed substantial gainful activity since the alleged onset of his disability.  At step two, he determined that Mr. Mayes had severe impairments

based on the combination of residual effects from a colostomy, major depressive disorder, mild mental retardation, and substance dependence.  At step three, the ALJ concluded that the combination of Mr. Mayes' depression and alcoholism met the criteria for Listings 12.04 and 12.09.  However, the ALJ concluded that Mr. Mayes' substance abuse was a significant contributing factor material to the finding of disability, without which Mr. Mayes would be able to perform some types of work.  At step four, the ALJ found that Mr. Mayes had no significant past work experience.   At step five, the ALJ concluded that Mr. Mayes, absent substance abuse, would have the residual functional capacity to perform simple and repetitive work.  Based on the testimony of the vocational expert, the ALJ determined that Mr. Mayes, absent substance abuse, was capable of performing work as a housekeeper, a janitor, or a food preparer, so that he was not disabled.

## Standard of Review

"The standard of review in disability cases limits . . . the district court to determining whether the final decision of the [Commissioner] is both supported by substantial evidence and based on the proper legal criteria."  *Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005), quoting *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995), quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  To determine whether substantial evidence exists, the court

must "'conduct a critical review of the evidence,' considering both the evidence that supports, as well as the evidence that detracts from, the Commissioner's decision . . . ." *Briscoe*, 425 F.3d at 351, quoting *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); see also *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001). The court must not attempt to substitute its judgment for the ALJ's judgment by reweighing the evidence, resolving material conflicts, or reconsidering facts or the credibility of witnesses. *Cannon v. Apfel*, 213 F.3d 970, 974 (7th Cir. 2000); *Luna*, 22 F.3d at 689. Where conflicting evidence allows reasonable minds to differ as to whether a claimant is entitled to benefits, the court must defer to the Commissioner's resolution of that conflict. *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997).

A reversal and remand may be required, however, if the ALJ committed an error of law, *Nelson v. Apfel*, 131 F.3d 1228, 1234 (7th Cir. 1997), or based his decision on serious factual mistakes or omissions, *Sarchet v. Chater*, 78 F.3d 305, 309 (7th Cir. 1996). This determination by the court requires that the ALJ's decision adequately discuss the relevant issues: "In addition to relying on substantial evidence, the ALJ must also explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe*, 425 F.3d at 351, citing *Herron v. Shalala*, 19 F.3d 329, 333-34 (7th Cir. 1994). Although the ALJ need not provide a complete written evaluation of every piece of testimony and evidence, *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005), a remand may be required if the ALJ has failed to "build an accurate and logical

bridge from the evidence to her conclusion." *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002), quoting *Dixon*, 270 F.3d at 1176.

*Discussion*

Mr. Mayes argues that the ALJ erred in finding that he did not meet the criteria of Listing 12.05. He also contends that the ALJ's conclusion that he would be capable of working if he refrained from drinking alcohol and using drugs was not supported by evidence in the record.

I.  *Listing 12.05*

Listing 12.05 lays out the standard for demonstrating a disability based on mental retardation. 20 C.F.R. Pt. 404, Subpt. P, App. 1. It states:

> Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> A.   Mental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded; or
>
> B.   A valid verbal, performance, or full scale IQ of 59 or less; or
>
> C.   A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function; or
>
> D.   A valid verbal, performance, or full scale IQ score of 60 through 70, resulting in at least two of the followings:

    1.     Marked restrictions of activities of daily living; or
    2.     Marked difficulties in maintaining social functioning; or
    3.     Marked difficulties in maintaining concentration, persistence, or pace; or
    4.     Repeated episodes of decompensation, each of extended duration.

*Id.* at § 12.05.

Mayes argues that a claimant need not present evidence of deficits in adaptive functioning prior to age 22 if he has offered evidence of a low IQ score. He relies on *Hodges v. Barnhart*, 276 F.3d 1265, 1266 (11th Cir. 2001), a case in which the Eleventh Circuit stated that, to meet the requirements of Listing 12.05(c), a claimant "need not present evidence that she manifested deficits in adaptive functioning prior to the age twenty-two, when she presented evidence of low IQ test results after the age of twenty-two." The court based this conclusion on its belief that absent evidence of sudden trauma that caused retardation, there should be a presumption that IQ remains fairly constant throughout life. *Id.* at 1268-69. The court cited comments by the Commissioner of Social Security from 2001 recognizing the potential for ambiguity in the listing:

> The proposed listing . . . stated that the significantly subaverage general intellectual functioning with deficits in adaptive behavior must have been initially "manifested" during the developmental period. We have always interpreted this word to include the common clinical practice of inferring a diagnosis of mental retardation when the longitudinal history and evidence of current functioning demonstrate that the impairment existed before the end of the developmental period.

*Id.* at 1269, quoting Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed. Reg. 50746, 50772 (Aug. 21, 2000).  The court instructed the ALJ to presume a mental impairment based solely on the low IQ scores.  *Id.* at 1269.  The court stated that the Commissioner would have the opportunity to present evidence from the claimant's daily life to rebut this presumption.  *Id.*

By no means is there unanimity among the circuit courts as to this presumption.  Several courts, including the Seventh Circuit, have agreed with the Eleventh Circuit's presumption that an individual's IQ score remains relatively constant throughout his or her life.  See, *e.g., Guzman v. Bowen*, 801 F.2d 273, 275 (7th Cir. 1986); *Muncy v. Apfel*, 247 F.3d 728, 734 (8th Cir. 2001); *Branham v. Heckler*, 775 F.2d 1271, 1274 (4th Cir. 1985).  However, this does not lead to the conclusion that all courts agree that a qualifying IQ score at some point in the claimant's life plus satisfaction of the criteria in a subcategory would be sufficient to prove a disability under Listing 12.05.

Section 12.00A of the Listings states:

Listing 12.05 contains an introductory paragraph with the diagnostic description for mental retardation.  It also contains four sets of criteria (paragraphs A through D).  If your impairment satisfies the diagnostic description in the introductory paragraph *and* any one of the four sets of criteria, we will find that your impairment meets the listing.

20 C.F.R. Pt. 404, Subpt. P, App. 1 (emphasis added). The introductory paragraph defines mental retardation as "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period . . . ." *Id.* at § 12.05. This definition includes two requirements: a low IQ score and deficits in adaptive functioning.[1] Similarly, the Diagnostic and Statistical Manual of Mental Disorders states that mental retardation is characterized by "significantly subaverage general intellectual functioning that is accompanied by significant limitations in adaptive functioning . . . ." American Psychiatric Association, 41 (4th edition 2000). Therefore, a claimant who asserts that he meets the requirements of any subcategory of Listing 12.05 must present evidence of a low IQ score and deficits in adaptive functioning. *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001); *Fischer v. Barnhart*, 309 F. Supp. 2d 1055, 1062 (N.D. Ill. 2004).

---

[1]The explicit requirement that a claimant demonstrate that he satisfied the requirements of the introductory paragraph in addition to one of the subcategories was added in an August 2000 amendment to the regulations for evaluating mental impairments. 65 Fed. Reg. 50746, 50776. The new regulations were effective September 20, 2000. See *Blakes v. Barnhart*, 331 F.3d 565, 570 (7th Cir. 2003)*; Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001). Prior to that, the Seventh Circuit had held that to meet the criteria of Listing 12.05(c), a claimant had to demonstrate only an IQ score of 60 to 70 and an additional impairment that imposed significant work-related limitations. *Guzman*, 801 F.2d at 274-75. For claims brought after September 20, 2000, the requirements are clear. A claimant who presents only evidence of a low IQ score and no evidence of contemporaneous deficits in adaptive functioning does not satisfy the requirements of the introductory paragraph, so it would be an error to presume a disability under any subcategory of Listing 12.05.

Dr. Smith administered a variety of tests to Mr. Mayes in December 2005. Mr. Mayes attained a verbal IQ score of 66, a performance IQ score of 65, and a full scale IQ score of 63. R. 190. These IQ scores potentially placed him within subcategory C or D of Listing 12.05. However, instead of analyzing whether Mr. Mayes had demonstrated that he satisfied the additional requirements for categories C or D, the ALJ first analyzed whether he had presented evidence of deficits in adaptive functioning.

The ALJ began by noting that Mr. Mayes had not provided any records to show that he was in special education classes or received special services while he was in school. R. 17. He then cited a report from July 7, 1996 in which Mr. Mayes reported having no difficulty with cooking, self care, banking, shopping, or transportation, R. 176, and a report from July 1997 in which he reported no problems with independent living skills, occupational functioning, or task orientation and learning ability, R. 172. Finally, the ALJ noted that at his psychological examination on December 19, 2005, Mr. Mayes had denied problems with basic daily living and stated that he was able to help around the house, cook, and travel independently. See R. 189. The ALJ concluded that Mr. Mayes had not presented sufficient evidence of deficits in adaptive functioning. R. 17.

The claimant has the burden of proving that he meets the criteria of a Listing. *Young*, 362 F.3d at 1000. To prove that he was mentally retarded, Mr.

Mayes (who was represented by counsel), needed to present evidence of deficits in his adaptive functioning.  The records Mr. Mayes provided in this case are sparse.  Neither the ALJ nor the court can be expected to fill in the gaps of a record, particularly when the claimant is represented by counsel at his hearing before the ALJ.  See *Glenn v. Secretary of Health and Human Services*, 814 F.2d 387, 391 (7th Cir. 1987) ("When an applicant for social security benefits is represented by counsel the administrative law judge is entitled to assume that the applicant is making his strongest case for benefits.").  Contrary to Mr. Mayes' argument, the ALJ did not disregard the evidence of his low IQ or make unreasonable accusations about the lack of school records.  Rather, the ALJ properly analyzed the record for evidence regarding Mr. Mayes' ability to function in society.  The ALJ's conclusion that Mr. Mayes did not provide evidence of deficits in adaptive functioning is supported by substantial evidence in the record.

II.     *Alcohol Use*

In 1996, Congress amended the Social Security Act to prohibit the payment of Social Security disability benefits if the applicant's alcoholism or drug addiction is material to the disability.  See Contract with America Advancement Act of 1996, Pub. L. 104-121 § 105.  The Act now provides that "an individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would (but for this subchapter) be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 1382c(a)(3)(J).  When an applicant for supplemental security income has both

a potentially disabling illness and is a substance abuser, the ALJ must first determine whether the claimant is disabled, without segregating out any effects that might be due to substance abuse.  See *Brueggemann v. Barnhart*, 348 F.3d 689, 694 n.2 (8th Cir. 2003); 20 C.F.R. § 416.935(b)(2).  Next, the ALJ must decide whether the substance abuse is a "contributing factor material" to the disability by evaluating which of the limitations would remain if the claimant stopped using drugs or alcohol and then determining whether those remaining limitations would be disabling.  20 C.F.R. § 416.935(b)(2).

The ALJ first concluded that when Mr. Mayes' depression was considered in conjunction with his substance abuse, he met the requirements for Listings 12.04 (affective disorders) and 12.09 (substance addiction disorders).  R. 17.  The ALJ explained that Mr. Mayes had demonstrated marked deficiencies in the functional areas of maintaining concentration, persistence or pace and daily activities.  *Id.*  Specifically, the ALJ stated: "the claimant does not have the ability to maintain regular attendance, or remain on task."  *Id.*  In reaching this conclusion, the ALJ relied on evidence in the record that showed that Mr. Mayes had continued to drink and smoke marijuana as recently as two days before his hearing.  R. 209.  He had been incarcerated twice for drug-related convictions.  R. 205.  In addition, the Harbor Light Detoxification Center reported that Mr. Mayes' substance abuse moderately impaired his ability to function.  R. 174.

The ALJ then proceeded to evaluate whether Mr. Mayes' substance abuse was a contributing factor material to the finding of a disability. Mr. Mayes argues that when restrictions on a claimant's activities based on mental limitations cannot be separated from restrictions based on substance abuse, the ALJ should find that substance abuse is not material. He relies on an emergency teletype from July 2, 1996, in which the Social Security Administration presented a list of questions and answers to provide guidance for implementing the newly amended statute and regulations. EM-96200, available at http://policy.ssa.gov (last visited Jan. 10, 2008). One question highlighted the fact that it can be challenging to disentangle the restrictions imposed by substance abuse from those resulting from another mental impairment. *Id.*, Question 29. In response, the Social Security Administration stated: "When it is not possible to separate the mental restrictions and limitations imposed by [drug or alcohol abuse] and the various other mental disorders shown by the evidence, a finding of 'not material' would be appropriate." *Id.*

Since that initial 1996 message, however, every circuit court to have considered the issue has placed on the claimant the burden of proving that a disability would exist in the absence of drug or alcohol abuse. *Parra v. Astrue*, 481 F.3d 742, 748 (9th Cir. 2007); *Doughty v. Apfel*, 245 F.3d 1274, 1275-76 (11th Cir. 2001); *Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000); *Brown v. Apfel*, 192 F.3d 492, 498 (5th Cir. 1999). These courts have provided several reasons for their decisions. First, the 1996 amendment to the statute amended

42 U.S.C. § 1382c, which defines a disability for the purpose of supplemental security income.   The claimant has the burden of proving disability, so any amendment to the definition of disability affects the claimant's burden.  *Brown*, 192 F.3d at 498.  Second, the Commissioner's burden at step five of the disability determination was created by  "judicial construction" of the statute and should not be expanded unless there is a "compelling justification or the clear intent of Congress undergirding it."  *Id.*   Most importantly, "placing the burden on the claimant is practical because the claimant 'is the party best suited to demonstrate whether [he] would still be disabled in the absence of a drug or alcohol addiction.'" *Parra*, 481 F.3d at 748, quoting *Brown,* 192 F.3d at 498.  The court is persuaded by this reasoning and holds that the burden of proof is on the claimant to demonstrate that his substance abuse is not material to the finding of a disability.

Here, Mr. Mayes has submitted minimal evidence about both his depression and his substance abuse.  Mr. Mayes' attorney had specifically requested that Dr. Smith evaluate "if Mr. Mayes has mental retardation or a learning disability, in addition to some other mental disorder."  R. 183.  As a result, the bulk of Dr. Smith's evaluation discusses Mr. Mayes' intellectual functioning.  In his summary, Dr. Smith stated:

> He also has depression and a post traumatic stress disorder, with a distrust of others, loss of interests, problems with energy and lack of trust in others. He may have paranoia, but his paranoid thoughts more likely are associated with his low intellectual functioning coupled with depression.  He has a history of polysubstance dependence, which is in partial remission, with his

only drinking occasionally, and the mental retardation and mental disorders appear to predate the substance use problems.

R. 191.  Dr. Smith diagnosed Mr. Mayes with major depressive disorder, recurrent without complete interepisodal recovery, severe with psychotic features; chronic post traumatic stress disorder; and polysubstance dependence in partial remission.

At his hearing before the ALJ, Mr. Mayes' attorney stated that Mr. Mayes was taking Mellaril, Librium, and Prozac as medications for his mental disorders. R. 200.  However, Mr. Mayes told Dr. Smith that he was not taking psychotropic medications.  R. 189.  Mr. Mayes also testified that eight of his friends or family members died during a 30 day period in 1997.  R. 214.  Mr. Mayes stated that he did not believe his drug or alcohol use affected his ability to work.  R. 213.

The ALJ analyzed whether Mr. Mayes' substance abuse was a significant contributing factor material to the finding of disability based on all of the evidence in the record.  The only evidence Mr. Mayes had presented on the issue was one statement by Dr. Smith that "mental disorders appear to predate the substance use problems."  R. 191.  This comment only obliquely addresses the issue of whether Mr. Mayes would still be disabled without his substance abuse. Presumably, Dr. Smith did not address this issue directly because Mr. Mayes' attorney specifically requested that he evaluate Mr. Mayes for mental retardation.

The ALJ noted that Mr. Mayes had testified that the day before the hearing, when he was not under the influence of alcohol or drugs, he had traveled two hours to visit his son and walk around the mall.  He reported to Dr. Smith that he avoided people and did not have any friends, R. 185, but also told Dr. Smith that he likes to talk to people and gets along well with people, R. 190.  Mr. Mayes attends Narcotics Anonymous meetings approximately three times per week.  R. 212.  During his mental status examination by Dr. Smith, Mr. Mayes was able to calculate story problems and to do simple subtraction and multiplication.  He was able to sustain his attention while Dr. Smith administered the WAIS-III exam.  R. 190.  The ALJ therefore concluded that Mr. Mayes, absent substance abuse, showed only mild limitations in daily activities and social functioning, moderate limitations in concentration, persistence or pace, and no episodes of decompensation.  R. 18.

To meet the requirements of Listings 12.04 or 12.09, a claimant must meet either the A and B criteria of the Listing or the C criteria.  20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.04, 12.09.  The B criteria of Listings 12.04 and 12.09 require marked limitations in two functional areas.  The ALJ determined that Mr. Mayes did not have marked limitations in any area absent his substance abuse.  The ALJ also concluded that there was no evidence in the record to support a finding that Mr. Mayes had met the C criteria because Mr. Mayes had no repeated episodes of decompensation and he was able to function outside a supportive living environment.  The ALJ therefore concluded that Mr. Mayes' alcohol and

drug use was a significant contributing factor material to the finding of disability and that without that substance abuse, he would not be disabled.  R. 20.

Mr. Mayes argues that the ALJ impermissibly "played doctor" by failing to obtain the opinion of a medical expert on this issue.  Pl. Br. at 9.  Mr. Mayes' attorney arranged for a psychological evaluation of Mr. Mayes *after* the hearing with the ALJ.  He could have requested that the psychologist provide an opinion as to the materiality of Mr. Mayes' drug and alcohol abuse on his claims of disability; he failed to do so.  If there is sufficient evidence in the record for the ALJ to make a decision, a medical opinion on the issue of the materiality of the substance abuse is not necessary.  *Doughty*, 245 F.3d at 1280-81; see also *Vester v. Barnhart*, 416 F.3d 886, 891 (8th Cir. 2005) (expressing doubt as to the need for medical evidence on the issue of the materiality of substance abuse to the finding of disability and stating "it seems within the ken of the ALJ to make a factual finding that the claimant is able to work when she is not abusing alcohol.") This is consistent with regulations that allow the ALJ to order the claimant to attend a consultative examination at the Commissioner's expense only after the ALJ has given "full consideration to whether the additional information needed . . . is readily available from the records of [the claimant's] medical sources. 20 C.F.R.  § 416.919a(a)(1).  Certainly, the ALJ could have requested additional information from Dr. Smith or asked Mr. Mayes to have an additional consultative examination.  20 C.F.R. § 416.912(e)-(f).  However, it was not a legal error for him to make a decision based only on the evidence already in the record.

Accordingly, the ALJ did not make an error in law in deciding that Mr. Mayes' substance abuse was a contributing factor material to his finding of a disability. The ALJ's decision was also supported by substantial evidence in the record.

*Conclusion*

The ALJ's decisions that Mr. Mayes had not demonstrated a disability that meets the listing for mental retardation and that he would not have been disabled without his substance abuse are supported by substantial evidence and are therefore affirmed. Final judgment will be entered consistent with this entry.

So ordered.

Date: January 10, 2008

David F Hamilton

DAVID F. HAMILTON, CHIEF JUDGE
United States District Court
Southern District of Indiana

Copies to:

Charles D. Hankey
charleshankey@hankeylawoffice.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov